**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED by _____ D.C.

DEC 19 2017

STEVEN M. LARIMORE
CLERK U S DIST CT
D. of FLA - MIAMI

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* Joanne Hatton, and **JOANNE HATTON,** individually, <br><br> Plaintiffs, <br> v. <br><br> **PHYSICIAN CHOICE PHARMACY LLC, JASON GRAMA,** and **SAAD HADDAD,** <br><br> Defendants. | 17CV 62499 WPD /BSS <br> **DOCKET NO.** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs and *qui tam* Relator Joanne Hatton, by and through her undersigned counsel JTB Law Group, LLC and The Talarchyk Firm, alleges of personal knowledge as to her observations and actions, and on information and belief as to all else, as follows:

## I.
## PRELIMINARY STATEMENT

1.     Physician Choice Pharmacy LLC ("PCP"), formerly known as PPP NC LLC, has committed systematic fraud by billing Medicare for medications and medical supplies that were unnecessary, unwanted, unused, and sometimes not even received by patients at all.

2.     In addition, PCP routinely dispensed medications without physician or pharmacist approval.

3.     PCP thereby fraudulently obtained millions of dollars from Medicare.

4.     Relator Joanne Hatton ("Relator"), Defendants' former director of pharmacy, therefore brings a *qui tam* action on behalf of the United States of America under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA") to recover treble the damages actually

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

sustained by, and civil penalties and restitution owed to, the United States as a result of a scheme by Defendants to commit fraud.

5.     In carrying out this fraud, Defendants knowingly (a) presented or caused to be presented false claims to obtain payments; (b) made or caused to be made or used false records or statements material to these false claims; and (c) knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property.

6.     This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). It will not be served on Defendants unless and until the Court so orders. A copy of the Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, has been served upon the Attorney General of the United States and on the United States Attorney for the Southern District of Florida pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d).

## II.
## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (as amended), a federal statute.

8.     The Court has personal jurisdiction over Defendants because Defendants (a) are residents of, and/or licensed to transact and does transact business in, this District; and (b) have carried out their fraudulent scheme in this District.

9.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 (b)(2), because Defendants can be found in, are licensed to do business in, and transact or have transacted business in this District, and the events and omissions that give rise to these claims have occurred in this District.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

10.     The Complaint has been filed within the period prescribed by 31 U.S.C. §§ 3730(h)(3) and 3731(b).

## III.
## NO PUBLIC DISCLOSURE;
## DIRECT AND INDEPENDENT KNOWLEDGE
## OF VIOLATIONS OF THE FALSE CLAIMS ACT

11.     There has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" in this Complaint.

12.     Relator makes the allegations in this Complaint based on her own knowledge, experience and observations.

13.     Relator is the original source of the information on which the allegations herein are based, has direct and independent knowledge of such information, and has voluntarily disclosed such information to the United States before filing this action.

14.     Specifically, Relator has disclosed this information to the Attorney General of the United States, the United States Attorney for the Southern District of Florida, and to certain agents of the United States, including Larry Bardfeld of the United States Attorney's Office, Mary Crane of the Department of Health and Human Services, and Houston Ramsey of the Food and Drug Administration. Relator made initial disclosures in approximately September of 2014.

## IV.
## THE PARTIES

**A.     Plaintiff the United States**

15.     Plaintiff the United States brings this action by and through Relator Joanne Hatton. At all times relevant to this Complaint, the United States, acting through the Centers for Medicare & Medicaid Services ("CMS"), has reimbursed Defendants for the provision of various medical services and treatments for eligible individuals through the Medicare program. Thus, the

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

United States brings this action on behalf of its agency, CMS, and on behalf of the Medicare program.

**B.      Relator Hatton**

16.      Relator also brings this action on behalf of herself and the United States.

17.      Relator is a citizen of the United States, and at all relevant times has been a resident of Miami-Dade County, Florida.

18.      Relator was employed as Defendants' director of pharmacy from March 7, 2014 to approximately August 2014 in Sunrise, Florida.

**C.      Defendants**

19.      Defendant Physician Choice Pharmacy LLC ("PCP") is a limited liability company formed and existing in the state of Florida.

20.      PCP's principal business address is 4529 North Pine Island Road, Sunrise, Florida 33351.

21.      On information and belief, PCP also operates in other states including New York and Texas.

22.      On information and belief, Defendant Jason Grama is part-owner and manager of PCP. Grama previously owned and operated another company named My Favorite Pharmacy LLC, which was dissolved after investigations of Medicare fraud.

23.      On information and belief, Defendant Saad Haddad is part-owner and manager of PCP.

4

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**V.**
**DEFENDANTS' FRAUDULENT ACTS**

**A. Defendants' Business**

24.     PCP is a mail-order pharmacy that sends medication and medical supplies directly to patients' homes. PCP mails these items to customers in many different states.

25.     PCP provides medications including Metformin, Lisinopril, antibiotics, various types of insulin, and compound pain relief creams.

26.     PCP provides medical supplies including glucose monitors, glucose test strips, and lancets.

27.     Through sources unknown to Relator, PCP obtained lists of diabetic Medicare beneficiaries.

28.     PCP maintains this database of patient leads on a customer relationship management software called "Vtiger."

29.     PCP employs pharmacy technicians to call the physicians of diabetic patients to solicit prescriptions and dispense medications.

30.     At the time Relator left PCP, only a small minority of PCP's patients were located in Florida itself.

31.     At the time Relator left PCP, approximately 600 patients were receiving medication and/or supplies from Relator's location.

32.     A large portion of these patients were located in Texas and New York.

33.     The remainder of the patient population was divided among multiple other states.

**B. Defendants Dispensed Medication without Pharmacist Supervision or Review**

34.     Under the laws of the State of Florida, a licensed pharmacy technician "*under the supervision of a pharmacist*, may initiate or receive communications with a practitioner or his or

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

her agent, on behalf of a patient, regarding refill authorization requests." Fla. Stat. § 465.014(1) (emphasis added).

35.    "A licensed physician may not supervise more than one registered pharmacy technician unless otherwise permitted...." *Id.*

36.    At all relevant times, PCP's Sunrise location employed up to six pharmacy technicians.

37.    However, Relator was the only pharmacist at that location.

38.    Furthermore, technicians routinely conducted their work in separate rooms from Relator.

39.    A senior technician named Carol Shaw was the *de facto* supervisor of PCP's Sunrise location. Shaw had the authority to discipline and terminate employees, including other technicians and Relator.

40.    Technicians also engaged in duties prohibited by Florida statutes and regulations.

41.    "'Dispense' means the transfer of possession of one or more does of a medicinal drug by a pharmacist to the ultimate consumer or her or his agent." *Id.* § 465.003(6).

42.    A technician may not engage in the "practice of the profession of pharmacy," including duties such as "dispensing" any medicinal drug. *Id.* §§ 465.003(13), 465.014(1).

43.    Substantially all, if not all, of the medications dispensed by PCP were actually dispensed by technicians who are not authorized dispensers.

44.    Under PCP's instructions, Relator's only duties were to transcribe the telephonic instructions of physicians or physicians' agents onto prescription pads. Relator transcribed information including the physician's name, the time and date of the order, and checked the boxes next to the ordered medications.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

45.     After Relator completed a prescription pad, she was required to hand it over to technicians, who then performed duties including printing prescription labels for medications; filling bottles and packages with the medications; and shipping these packages to patients.

46.     Relator was not told the name of the patient for whom the medications were prescribed.

47.     Relator thus could not access the patient's medical records to assess the prescription for potential adverse reactions and interactions, or to determine the appropriate dosage, as required by Florida law. *See id.* ("As an element of dispensing, the pharmacist shall, prior to the actual physical transfer, interpret and assess the prescription for potential adverse reactions, interactions, and dosage regimen she or he deems appropriate….").

48.     When Relator complained about this illegal arrangement to Defendant Grama, Grama stated that the arrangement was good for efficiency.

49.     In addition, PCP's technicians re-filled numerous prescriptions completely without Relator's prior knowledge.

50.     Shaw told Relator that Shaw billed Medicare for medications and supplies using Shaw's home computer after work. The items billed in this way were actually not sent to patients at all by PCP.

51.     On at least one occasion, PCP's technicians re-filled a patient's insulin without a physician's prescription and without Relator's knowledge, and based solely on the patient's own request. The patient is hereinafter referred to as "Doe."

52.     Relator belatedly discovered this conduct when she picked up a phone call from Doe requesting insulin.

7

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

53.     After speaking with Doe, Relator called Doe's physician, and was informed that Doe had been discharged from the physician's care approximately eight months prior for failure to regularly take insulin, and failure to show up for diabetic treatment.

54.     On information and belief, after Doe had been discharged, PCP's technicians dispensed four to five months' of insulin to Doe using an old prescription pad.

55.     After learning of Doe's discharge, Relator informed Doe that PCP could not provide Doe with additional insulin.

56.     However, Doe then called PCP's office again to renew his request for insulin. When Relator objected to sending insulin to Doe, a technician reported Relator to Grama.

57.     Grama summoned Relator to his office to question Relator's decision not to re-fill Doe's outdated insulin prescription.

58.     Grama stated words to the effect that sending insulin to Doe was "not a big deal," and that the technicians had "rubber-stamped" Doe's request.

59.     Relator told Grama that Doe might die from diabetic shock due to irregular and unsupervised intake of insulin, which would create liability for PCP. Thereafter, Grama decided not to send insulin to Doe.

**C. Defendants Sent Unsolicited and Unused Items at Medicare's Expense**

60.     On a daily basis, PCP sent hundreds of items to patients which were never requested, and often end up not being used by the patients.

61.     Relator maintained records of approved prescriptions on her work computer using the software "AbacusRx."

62.     PCP also maintained separate records of shipped medications on a computer located in the mailroom using software to Relator.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

63.     When Relator compared the records on the two computers, she observed that the mailroom computer records showed that substantially more medications had been shipped than there were prescriptions in AbacusRx. During at least one 24-hour period, Relator noticed that the mailroom computer records showed more than 200 shipments without matching prescriptions on AbacusRx.

64.     On information and belief, a substantial number of the phone calls that PCP's technicians made to patients to obtain approval were made to incorrect and/or disconnected numbers, or otherwise did not result in actual conversations with the patients. Regardless, PCP sent items to those patients.

65.     On multiple occasions, PCP received phone calls from physicians' nurses complaining that patients had been sent medication without physician authorization.

66.     On multiple occasions, PCP received phone calls from patients complaining that they had received medication and supplies that they did not request or want.

67.     Patients frequently returned unwanted items to PCP. Alternatively, items were returned because they had been sent to an incorrect location.

68.     Relator estimates that upwards to 200 items were returned to PCP almost every day

69.     PCP removed the prescription labels from returned items, and re-shelved them for later delivery to other patients.

70.     Although PCP billed Medicare for each item sent to a Medicare beneficiary, PCP did not refund Medicare when the item was returned.

71.     PCP billed Medicare again for the same items when they were later shipped to different patients.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

72.     On information and belief, some of the items had expired by the time they were shipped to different patients.

## VI.
## THE LEGAL FRAMEWORK

**A.     The False Claims Act**

73.     The False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, (the "FCA"), reflects Congress's objective to "enhance the Government's ability to recover losses as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986). As relevant here, the FCA establishes treble damages liability for an individual or entity that:

(A)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

* * *

(G)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government

31 U.S.C. § 3729(a)(1).

74.     "Knowing," within the meaning of the FCA, is defined to include reckless disregard and deliberate indifference. *Id* § 3729(b)(1).

75.     An "obligation" within the meaning of the FCA includes "[a]ny overpayment retained by a person after the deadline for reporting and returning the overpayment specified in" 42 C.F.R. § 401.305(b).

10

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

76.     In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.[1]

77.     The FCA provides for payment of a percentage of the United States' recovery to a private individual who brings suit on behalf of the United States (the "Relator") under the FCA. *See* 31 U.S.C. § 3730(d).

**B.     The Medicare Program**

78.     In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare program, to pay for certain healthcare services provided to certain segments of the population. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 1395 *et seq.*

79.     CMS administers the Medicare program.

80.     Medicare Part A and Medicare Part B authorize payment of federal funds for medical services provided to Medicare beneficiaries.

81.     Individuals enrolled under Medicare Part A and/or B may also receive prescription drug coverage under Medicare Part D. Part D prescription plans are administered by insurance companies receiving contributions from the federal treasury. 42 § 1395w-101, *et seq.*

82.     In order to receive reimbursement from Medicare, providers such as Defendants must submit a claim form.[2] That claim form requires the provider to make the following certification:

---

[1] 31 U.S.C. § 3729(a)(1)(G) provides a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410). The Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. 2461 note, substituted a different statutory formula for calculating inflation adjustments on an annual basis. On February 3, 2017, the Department of Justice promulgated a Final Rule increasing the penalty for FCA violations occurring after November 2, 2015. For such penalties assessed after February 3, 2017, the minimum penalty is $10,957 and the maximum is $21,916. *See* 28 C.F.R. § 85.5; 82 F.R. 9131 (February 3, 2017).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

> In submitting this claim for payment from federal funds, I certify that: 1) the information on this form is true, accurate and complete; … 4) this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment … 5) the services on this form were medically necessary ….

*Id.*, at 2.

83.     The submission of such a certification, if false, is a violation of the FCA. 31 U.S.C. § 3729(a).

84.     A provider may also submit the electronic equivalent of this claim form, which contains a substantially similar certification.

85.     Compliance with applicable Medicare program rules and regulations is material to the government's decision to pay and its subsequent payment of claims. In order to be reimbursable by Medicare, medical services and/or supplies must be medically necessary, must actually be provided, and must be documented in a manner that allows CMS to determine if the services are properly payable.

86.     At all times relevant herein, Defendants have been enrolled Medicare suppliers. Defendants are eligible to receive reimbursement from CMS for the supplies they provide to patients who are insured through Medicare.

---

[2]     Form CMS-1500 (approved OMB-0938-1197 form 1500 (02-12)), *available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms1500.pdf (last accessed Dec. 18, 2017).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## VII.
### FIRST CLAIM FOR RELIEF
### FEDERAL FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS

87.     Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

88.     Throughout the statutory period, Defendants presented claims to CMS for prescription medication and medical supplies which were:

    a.     not requested or wanted by patients;

    b.     not authorized by physicians;

    c.     not authorized by pharmacists; and/or

    d.     not received or used by patients.

89.     For each of their claims for reimbursement, Defendants certified that the information they were providing was true, accurate and complete; and that the claim complied with all applicable Medicare laws, regulations, and instructions for payment.

90.     These claims and certifications were submitted to Medicare on the express instructions of Defendants Grama and Haddad, or with their knowledge. Alternatively, Defendants Grama and Haddad recklessly disregarded or were deliberately indifferent to the possibility that such claims were being submitted by the company they own.

91.     Each such representation was false, for the reasons described above.

92.     Accordingly, Defendants knowingly presented false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(l)(A).

93.     The submission by Defendants of these false claims caused CMS to pay out monies that CMS would not have paid if it had known of the falsity of Defendants' claims and certifications.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

94.     Each false or fraudulent claim thus submitted for payment by CMS is a separate violation of the FCA.

95.     By reason of the false or fraudulent claims that Defendants knowingly presented, the United States has been damaged in a substantial amount, to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

**VIII.**
**SECOND CLAIM FOR RELIEF**
**FEDERAL FALSE CLAIMS ACT: MAKING OR USING**
**FALSE RECORD OR STATEMENT TO CAUSE FALSE CLAIM TO BE PAID**

96.     Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

97.     As described above, throughout the statutory period, Defendants knowingly created false records and statements when they submitted these claims for payment, including false documentation of prescriptions.

98.     These false records and statements were created on the express instructions of Defendants Grama and Haddad, or with their knowledge. Alternatively, Defendants Grama and Haddad recklessly disregarded or were deliberately indifferent to the possibility that such false records and statements were being created by employees of the company they own.

99.     Accordingly, Defendants knowingly used false records or statements material to false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1)(B).

100.    The submission of these false records or statements caused CMS to pay out monies that CMS would not have paid if it had known of the falsity of Defendants' records or statements.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

101.   Each submission of a false record or statement is a separate violation of the FCA.

102.   By reason of the false or fraudulent records or statements that Defendant knowingly submitted, the United States has been damaged in a substantial amount, to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

## IX.
### THIRD CLAIM FOR RELIEF
### FEDERAL FALSE CLAIMS ACT:
### IMPROPERLY AVOIDING AN OBLIGATION TO PAY
### OR TRANSMIT MONEY TO THE GOVERNMENT

103.   Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

104.   Defendants knew or had reason to know that they had been overpaid by Medicare for medications and supplies which were:

    a.   not requested or wanted by patients;

    b.   not authorized by physicians;

    c.   not authorized by pharmacists; and/or

    d.   not received or used by patients.

105.   Under 42 U.S.C. 1320a-7k(d), Defendants were obligated to report and return each overpayment "by the later of (A) ... 60 days after the date on which the overpayment was identified; or (B) the date any corresponding cost report is due ...."

106.   42 C.F.R. § 401.305(a)(2) provides: "A person has identified an overpayment when the person has, or should have through the exercise of reasonable diligence, determined that the person has received an overpayment and quantified the amount of the overpayment."

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

107.    As a result of the fraud described herein, Defendants have received overpayments from CMS that Defendants failed to return.

108.    Each failure to comply with the obligations of 42 U.S.C. 1320a-7k(d) is a separate violation of 31 U.S.C. § 3729(a)(l)(G).

109.    By reason of Defendants' violations of 31 U.S.C. § 3729(a)(l)(G), the United States has been damaged in a substantial amount, to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Relator respectfully requests that this Court enter judgment in her favor and that of the United States, and against Defendants, granting the following:

(A)    On all Claims for Relief (violations of the FCA, 31 U.S.C. §§ 3729(a)(l)(A), 3729(a)(l)(B), and 3729(a)(l)(G)), an award to the United States for treble its damages, in an amount to be determined at trial, plus a statutory penalty for each violation of the FCA;

(B)    On all Claims for Relief, an award to the United States for its costs pursuant to 31 U.S.C. § 3729(a)(3);

(C)    On all Claims for Relief, an award to Relator in the maximum amount permitted under 31 U.S.C. § 3730(d);

(D)    On all Claims for Relief, an award to Relator of the reasonable attorneys' fees, costs, and expenses she incurred in prosecuting this action;

(E)    On all Claims for Relief, awards to the United States and to Relator for pre- and post-judgment interest at the rates permitted by law; and

(F)    An award of such other and further relief as this Court may deem to be just and proper.

16

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by the Complaint.

Dated: December 19, 2017

Respectfully submitted,

**JTB LAW GROUP, LLC**

*/s/ Jason T. Brown*
Jason T. Brown
    (*pro hac vice* application forthcoming)
Benjamin Lin
    (*pro hac vice* application forthcoming)
155 2nd Street, Suite 4
Jersey City, NJ 07302
(877) 561-0000 (office)
(855) 582-5297 (fax)
*jtb@jtblawgroup.com*
*ben.lin@jtblawgroup.com*

**THE TALARCHYK FIRM**

*/s/ Tina M. Talarchyk, Esquire*
Tina M. Talarchyk, Esquire
Fla. Bar No. 794872
The Worth Avenue Building
205 Worth Avenue, Suite 320
Palm Beach, FL 33480
(O) +1.561.899.3333
(F)  +1.561.899.3379
tmt@palmbeachbk11.com
www.palmbeachbk11.com

*Attorneys for Relator Joanne Hatton*

17

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2017, I caused a true copy of the Complaint in the matter captioned *United States of America ex rel. Joanne Hatton v. Physician Choice Pharmacy LLC, et al.* to be served upon the following, along with written disclosure of substantially all material evidence and information possessed by Relator:

*by hand delivery to*

Larry Bardfeld
Assistant United States Attorney
Southern District of Florida
United States Attorney's Office
500 E. Broward Blvd.
Ft. Lauderdale, FL 33394

*by USPS Registered Mail, Return Receipt Requested, to*

Office of the Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

/s/ Tina M. Talarchyk, Esquire
Tina M. Talarchyk, Esquire

18